IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JONAH HEYERHOLM, RITA HEYERHOLM, and
JOHN HEYERHOLM,

       Appellants,        OPINION and ORDER

 v.

                         23-cv-328-jdp

RYAN JOHNSON and ANGELA JOHNSON,

       Appellees.

---

  This bankruptcy appeal focuses on the meaning of the words "malicious" and "willful" as used in the statute identifying debts that cannot be discharged. Appellant Jonah Heyerholm was seriously injured by the propellor of a boat owned by Ryan Johnson and Angela Johnson. Jonah and his parents (Jonah was a minor at the time) sued the Johnsons in state court for their injuries, but the case was dismissed when the Johnsons filed a Chapter 7 bankruptcy petition. The Heyerholms filed an adversary proceeding in the bankruptcy court, contending that any debts that would be incurred from the state-court lawsuit were not dischargeable under 11 U.S.C. § 523(a)(6) because they were the result of a "willful and malicious injury" to the Heyerholms.

  After a trial, the bankruptcy court found in an oral decision that the Johnsons' conduct was "willful" but not "malicious," so it entered judgment in the Johnsons' favor. The Heyerholms appeal, contending that the bankruptcy court applied the wrong definition of "malicious." The Johnsons did not file a cross appeal, but they contend that this court can affirm the bankruptcy court's decision even if it was wrong about the meaning of "malicious" because the Johnsons' conduct was not "willful."

The court agrees with the Heyerholms. The bankruptcy court's definition of "willful" was consistent with circuit precedent, but its definition of "malicious" was not. So the case will be remanded to allow the bankruptcy court to determine whether the Johnsons' conduct was "malicious" under the correct standard.

BACKGROUND

The bankruptcy court did not issue a written decision with findings of fact. But the court rendered an oral decision summarizing the facts, explaining its view of the evidence, and providing reasons for its legal conclusions. *Heyerholm v Johnson*, No. 22-49-cjf (Bankr. W.D. Wis.), Dkt. 44, at 113–25. Neither side challenges what the bankruptcy court described as undisputed facts.

The Johnsons own a motorboat. Jonah Heyerholm was friends with the Johnsons' daughter, and the Johnsons invited Jonah to go boating with them in August 2021. At one point, Jonah was wakeboarding behind the boat. Eventually, he fell in the water.

Ryan Johnson circled the boat around to pick up Jonah. As the back of the boat drifted toward Jonah, Ryan put the boat into forward gear to move away from Jonah, but the boat went into reverse instead. Jonah's leg got caught in the propellor, causing serious injuries.[1]

The Heyerholms sued the Johnsons in Dane County Circuit Court. (The parties do not say what claims the Heherholms asserted.) A few months later, the Johnsons filed a Chapter 7 bankruptcy petition, and the state-court lawsuit was dismissed as a result. In response, the

---

[1] Neither the parties in the briefs nor the bankruptcy court in its oral decision describe the injuries with any specificity. The bankruptcy court described them as "life changing." No. 22-49-jcf, Dkt. 44, at 115:2. The Heyerholms say that the propellor cut Jonah's "muscles and femoral artery." Dkt. 5, at 15.

Heyerholms filed an adversary proceeding in the bankruptcy, contending that any debts from the state-court lawsuit were nondischargeable. After holding a bench trial, the bankruptcy court disagreed and dismissed the case. The Heyerholms appeal.

Both the bankruptcy court and this court have jurisdiction over the adversary proceeding under 28 U.S.C. § 157 and § 1334. *See Zedan v. Habash*, 529 F.3d 398, 402–03 (7th Cir. 2008).

ANALYSIS

This appeal is about the interpretation and application of 11 U.S.C. § 523(a)(6), which states that a debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The bankruptcy court concluded that the injury the Johnsons caused Jonah was willful but not malicious, so the debt was dischargeable. This court reviews the bankruptcy court's legal determinations without deference, and factual findings for clear error. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008).

On appeal, the Heyerholms contend that the bankruptcy court defined "malicious" incorrectly. The Johnsons agree with the bankruptcy's court determination on the meaning of "malicious," but they contend that the bankruptcy court defined "willful" incorrectly.

Neither side challenges the bankruptcy court's findings of historical fact. But the Heyerholms say that the bankruptcy court's findings necessarily lead to a conclusion that the Johnsons' conduct was malicious if the correct definition of malicious is applied, and the Johnsons say the same thing about applying the correct definition of willful. The Johnsons did not file a cross appeal, but the court can affirm on any ground supported in the record, so long as that ground was adequately addressed in the bankruptcy court and the Heyerholms had an

3

opportunity to contest the issue. *See American Homeland Title Agency, Inc. v. Robertson*, 930 F.3d 806, 810 (7th Cir. 2019).

Section 523(a)(6) has been on the books for more than a century, but there is still much confusion and disagreement about its meaning and application, as observed by the court of appeals, other courts, and commentators. *See, e.g.*, *Jendusa-Nicolai v. Larsen,* 677 F.3d 320, 323–24 (7th Cir. 2012); *In re Berge*, 953 F.3d 907, 914 (6th Cir. 2020); 4 Collier on Bankruptcy ¶ 523.12 (16th ed. 2024). Courts have applied different meanings to "willful" and "malicious," often with little explanation. The definitions vary on whether the standards are subjective or objective, what the debtor must know, how certain that knowledge must be, and how wrongful the conduct must be. *Jendusa-Nicolai*, 677 F.3d at 323–24. Some courts say that "willful" is about the likelihood of harm while others say that "malicious" is about that. *Compare Panalis v. Moore*, 357 F.3d 1125, 1129 (10th Cir. 2004), *with Petralia v. Jercich*, 238 F.3d 1202, 1208–09 (9th Cir. 2001). And some courts have collapsed the definitions into one inquiry, simply asking whether the conduct was "willful and malicious" without distinguishing the two terms. *See, e.g., McClendon v. Springfield*, 765 F.3d 501, 505 (5th Cir. 2014).

The Court of Appeals for the Seventh Circuit expressed its view in *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767 (7th Cir. 2013), defining "willful" and "malicious" separately, and adopting expansive views of both terms. In defining "willful," the court acknowledged the Supreme Court's holding in *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), that "[w]illfulness [under § 523(a)(6)] requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *First Weber*, 738 F.3d at 767. But the court of appeals held that "deliberate or intentional" did *not* mean subjective awareness. Rather, it said that conduct was willful "*either* if the debtor's motive was to inflict the injury, *or* the debtor's act was

substantially certain to result in injury." *Id.* (emphasis added and internal quotation marks omitted). In a later case, the court confirmed that "willfulness is judged by an objective standard" under § 523(a)(6). *Gerard v. Gerard*, 780 F.3d 806, 811 (7th Cir. 2015). This is different from most other circuits, which "have adopted a purely subjective approach, requiring that the debtor desire the consequences of his or her conduct or, at least, subjectively believe that the injurious consequences are substantially certain to result from the conduct." 4 Collier on Bankruptcy ¶ 523.12; *but see Miller v. J.D. Abrams, Inc.,* 156 F.3d 598 (5th Cir. 1998) (applying objective standard); *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012) (same).

As for "malicious," the court of appeals adhered to a definition it had adopted before *Kawaauhau*, holding that a debtor is malicious when he acts "in conscious disregard of his duties *or* without just cause or excuse." *First Weber*, 738 F.3d at 774–75 (internal quotation marks and alterations omitted, and emphasis added). The court also clarified that a finding of malice does not require "ill-will or specific intent to do harm." *Id.* This definition is also more expansive than most circuits, which require that the debtor's conduct be in conscious disregard of duties *and* without just cause or require the presence of aggravating circumstances. *See* 4 Collier on Bankruptcy ¶ 523.12; *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *Jennings*, 670 F.3d at 1334. The court of appeals has more recently affirmed the *First Weber* standard, again using the disjunctive, stating that malicious means that the debtor "acted in conscious disregard of his duties or without just cause or excuse." *In re Calvert*, 913 F.3d 697, 701 (7th Cir. 2019) (internal quotation marks and alterations omitted); *see id.* at 702 (Bucklo, J., dissenting) (stating the debtor acted maliciously if he acted "without just cause or excuse").

5

*First Weber* did not elaborate on what it meant by "conscious disregard of his duties."[2] Instead, the court seemed to focus on "without just cause or excuse" when it explained why a claim for tortious interference necessarily satisfied the "malicious" element in § 523(a)(6):

> First Weber's state-law tortious interference claim required a finding that Horsfall was "not justified or privileged to interfere" with its contractual rights. The state court thus determined that Horsfall's interference was intentional and that he was neither justified nor privileged to interfere with First Weber's rights. In order to reach this conclusion, the state court had to find that Horsfall's actions were not reasonable or taken in good faith. This inquiry substantially mirrored the federal test for maliciousness. As before, there is nothing fundamentally unfair about holding Horsfall to this finding.

*First Weber*, 738 F.3d at 775. The court noted that the interference was intentional, but the court did not equate "intentional interference" with "conscious disregard of duties," and it did not say that a creditor must prove both lack of justification *and* conscious disregard. Rather, as already noted, the test is disjunctive. Either is sufficient.

The next step is to review the bankruptcy court's application of § 523(a)(6). The bankruptcy court followed *First Weber* in concluding that conduct is willful if the debtor's motive was to inflict the injury or if the debtor's act was "substantially certain to result in injury." No. 22-49-jcf, Dkt. 44, at 119. The court found that the Johnsons did not intend to inflict injury, but their conduct was willful because it was substantially certain to result in

---

[2] In *Jendusa-Nicolai*, 677 F.3d at 324, the court suggested that it meant "knowing he had no legal justification." That appears consistent with the view of other courts that it is about disregard of *legal* duties. *See, e.g.*, *In re Kirvan*, No. 21-1250. 2021 WL 4963363, at *4 (6th Cir. Feb. 6, 2021) (in case about embezzlement, stating that the debtor "disregarded his duty to pass the cash receipts on . . . for deposit"); *In re Margulies*, 721 Fed. Appx. 98, 101 (2d Cir. 2018) ("A finding of malice . . . is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.").

injury. *Id.* at 120. In finding substantial certainty, the court cited evidence that the Johnsons knew that their boat's transmission had problems for years, but they failed to take the boat to a mechanic. Specifically, "from time to time" the boat "would seem to slip a little while shifting gears," would "drift slowly" in neutral, and would "sometimes ratchet into gear and drift in idle." *Id.* 121. Also, on "one or more occasions," the propeller "continued to rotate, whether the boat was in forward, reverse, or neutral." *Id.* The court found:

> A rotating propeller, whether the boat is in forward, neutral, or reverse, to any reasonable person, would be substantially likely to create the risk of injury to anyone who is behind a boat. And that is the case, even if the boat doesn't go into reverse accidentally or unintentionally, as occurred here. If a boat is drifting and those propellers are turning, and there's somebody behind the boat even if it's not in reverse, there is a substantial likelihood that the person behind the boat is going to be injured.

*Id.* at 122.[3] Based on its finding of substantial certainty, the court concluded that the injury was willful:

> Given the fact that there were gear-shifting issues from time to time over the course of the ownership of the boat; that the boat would slip a little while shifting gears, it would drift slowly; its propellers, on one or more occasion[s], even in neutral continued to rotate, that the boat would ratchet in gear, taken together convinced this Court that the [willful] element . . . under 523(a)(6) has been satisfied by a preponderance of the evidence, and that the act here was, for the purpose of bankruptcy, willful.

*Id.* at 122–23.

---

[3] No party challenges the bankruptcy court's finding that it was substantially certain that someone in Jonah's position would be injured, and no party contends that the bankruptcy court's use of the phrase "substantially likely" suggests that the court was not applying the "substantial certainty" test, so the court does not consider those issues.

As for "malicious," the bankruptcy court cited the *First Weber* definition, but it then provided its own gloss, stating it "means simply I did something knowing it was highly likely injury would result from my act." *Id.* at 120. The court also stated there is a "temporal element," which the court described as follows:

> I am undertaking an act. Here, I'm undertaking the act of operating this boat. And in particular, I'm undertaking the act of operating this boat in August of 2021. And by taking it out on the lake, by permitting one or more persons to ski or wakeboard, or tube behind the boat, do I know that—do I know that it is highly likely to result in injury? That my taking them out and permitting that activity behind the boat is highly likely to result in injury?

*Id.* at 123–24. Applying this standard, the bankruptcy court found that the Johnsons' conduct was not malicious, providing the following reasons:

> Johnson[s'] daughter was preparing, getting ready to wakeboard once Jonah was picked up. Here, their daughter would have been the next person in the water. And the Court does believe that the testimony that if they thought injury was highly likely to result from pulling someone behind the boat, they would never have put their daughters in a position where there was a risk of injury to them. And the Court does believe that if they thought it was highly likely someone, anyone, including Jonah, would be injured on that day, they wouldn't have put him in that position.
>
> . . .
>
> [G]iven that the varying testimony about the transmission problems does only illustrate that there were, over the course of three years, some occasional issues with the transmission, that until the date of this accident, that had never resulted in the boat going into reverse, because there is no evidence that it had ever happened before this. I cannot conclude that the Johnsons knew that operating the boat on that day was highly likely to result in injury.

*Id.* at 124–25.

To sum up, the bankruptcy court determined that the definitions of both willful and malicious were about the likelihood of harm. The court applied an objective standard when determining whether the Johnsons' conduct was willful, finding that the Johnsons' past problems with their boat made it substantially certain that someone in Jonah's situation would be harmed. But the court applied a subjective standard when determining whether Johnsons' conduct was malicious, finding that it was not malicious because the Johnsons did not *know* that an injury was likely.

If this court were writing on a blank slate, the court would affirm the bankruptcy's court judgment. *Kawaauhau* says that the injury must be "deliberate or intentional" to satisfy § 523(a)(6) and that neither negligent nor reckless conduct is sufficient to meet that standard. 523 U.S. at 61, 64. The Court rejected a view that would impose liability in "situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor." *Id.* at 62. This suggests that § 523(a)(6) does not apply unless the injury was "desired" or "anticipated" by the debtor. As already discussed, that is the view of most circuits. Even in *Jendusa-Nicolai*, the court said that the consensus view of a willful and malicious injury is "one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." 677 F.3d at 324. Under that view, the bankruptcy court would be correct in concluding that the debtor must *know* that his conduct is likely to cause injury.

But *Jendusa-Nicolai* did not actually adopt a standard, and *First Weber* appeared to adopt a broader definition, even after acknowledging *Kawaauhau*. The court says "appeared" because the court of appeals did not acknowledge that it was adopting a view that departed from the consensus view summarized in *Jendusa-Nicolai*. Regardless, this court is bound by the standard

9

adopted in *First Weber* and affirmed in later cases such as *Gerard* and *Calvert*. Conduct is willful under *First Weber* if the injury is intended *or* if injury is substantially certain, regardless of whether the debtor is aware of the risk. And conduct is malicious under *First Weber* if the debtor acted in conscious disregard of his duties *or* if the conduct was "without just cause or excuse." That definition of "malicious" is not necessarily inconsistent with *Kawaauhau*, which was about the meaning of "willful," not "malicious." And one of the common legal definitions of "malicious" is simply "without just cause or excuse." *Malicious*, Black's Law Dictionary (12th ed. 2024).

So, under *First Weber*, the debtor may inflict a "willful and malicious injury" even he does not know or believe that injury is likely. The bankruptcy court's decision rested on its finding that that the Johnsons did not believe that Jonah would be injured, so the decision must be vacated.

The bankruptcy court did not identify the authority it was relying on to conclude that malicious injury requires the debtor to know that injury was highly likely. The court said only that was the way "another court put it." No. 22-49-cjf, Dkt. 44, at 120. The Heyerholms suggest that the court was referring to *Jendusa-Nicolai*. If so, the court agrees with the Heyerholms that *Jendusa-Nicolai* does not help the Johnsons. *Jendusa-Nicolai* includes the following observation: "[W]e imagine that all courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." 677 F.3d at 324. As already noted, that statement is not court's articulation of the Seventh Circuit's standard on "willful and malicious injury." It is the *Jendusa-Nicolai* court's understanding of what conduct would preclude

discharge in every circuit. The court did not need a more precise definition in *Jendusa-Nicolai* because the conduct at issue was attempted murder, which would obviously satisfy any reasonable definition of "willful and malicious injury." In any event, the court in *Jendusa-Nicolai* did not say that the language "knowing [the injury] was highly likely to result from his act" was a definition of "malicious." Rather, that language seems to track more closely with the definition of "willful" adopted by other circuits. But *First Weber* adopted a different definition of "willful," which the bankruptcy court applied when it was defining "willful." No Seventh Circuit case has defined "malicious" to mean knowledge that an injury is highly likely.

The Johnsons contend that remand is not required because the court should have applied "a subjective standard" to the definition of "willful." Dkt. 7, at 28. But the Johnsons rely on their interpretation of *Kawaauhau* and case law from outside the circuit. As already noted, the court of appeals in this circuit held—even after *Kawaauhau*—that "willfulness [under § 523(a)(6)] is judged by an objective standard." *Gerard*, 780 F.3d at 811. So the Johnsons' argument fails. And the Johnsons do not contend that the bankruptcy court clearly erred in finding that injury to Jonah was substantially certain, so they forfeited that issue.

The remaining question is whether to remand the case to allow the bankruptcy court to make a new determination on whether the injuries to the Heyerholms were malicious. The Heyerholms asks this court to decide that issue as a matter of law, but "[w]hether an actor behaved willfully and maliciously is ultimately a question of fact reserved for the trier of fact." *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). In this case, the bankruptcy court has not considered whether the Johnsons consciously disregarded their legal duties or whether their conduct was without just cause or excuse. So there is no finding for this court to review. And the Heyerholms have not explained why the bankruptcy court would be required to rule in

11

their favor on those questions. Rather, their argument is that the bankruptcy court found willfulness, so it necessarily must find maliciousness. But those are two different analyses in this circuit, so one does not necessarily follow from the other. The court will remand the case to allow the bankruptcy court to determine whether the Johnsons inflicted a malicious injury on the Heyerholms under the Seventh Circuit's standard.

ORDER

IT IS ORDERED that the bankruptcy court's judgment is VACATED, and the case is REMANDED for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment accordingly.

Entered September 19, 2024.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge